STANARD, J.
The return in this cause to the writ of habeas corpus ascertains that the defendant in error was detained in the custody of the jailor of Augusta by virtue of an escape warrant, issued by a magistrate of Bath county, on the oath of the plaintiff in error, the deputy sheriff of that county, that the said defendant, who was charged in execution in the custody of the said deputy at the suit of sundry persons named in the warrant, had escaped out of the custody of the said deputy ; and that he was not detained for any other cause. The legality of the de-tainer depends oil the validity of the escape warrant; and that depends on the authority of the magistrate to issue it for the cause specified therein. That cause is the escape of the party out of the custody of the deputy sheriff of Bath, in which custody he was charged in execution at the suit of sundry persons. It is not denied (and if it were, it is perfectly clear) that according to the just interpretation of the warrant, the custody from' which the alleged escape was made was *620 that resulting' from arrest by the officer, not that of commitment to and confinement within the walls of the prison of the county. The argument, therefore, has turned mainly on the question whether an escape warrant can issue against one who escapes from the arresting officer before he has been conducted to jail; and the solution of this question depends on the construction of the act of assembly concerning escape warrants, 1 Rev. Code, ch. 136, § 1, p. 548.
*1 assent to the proposition of the counsel of the plaintiff in error, that the statute ought to be fairly construed according to the intendment of the legislature, and that a literal construction of its awkward phraseology ought not to be adopted in disregard of its spirit and intent. Was it the intent of the -act to authorize this warrant for an escape from the custody produced by the arrest only, though the party arrested had never been conducted or committed to, or confined in, the prison of the county, corporation or district ? A negative answer to this question is, I think, justified by every principle of sound construction.
The act is manifestly taken from the statute of 1 Anne, st. 2, ch. 6, § 1, and all the awkwardness of its phraseology is imputable to the too literal adherence to that statute, without due attention to or allowance for the differences between the prisons and the keepers thereof to which that statute had reference, and the prisons and keepers thereof in this state. That statute was intended to provide for escapes from prisons not kept by the arresting officers, but by others, whose lawful custody must in every case commence within the prison, and be evidenced by the actual tradition of the person of the prisoner from the arresting officer to the keeper, or by some order of court. It industriously avoids to provide the remedy of the warrant for an escape from the sheriff or the arresting officer. This statute, the parent of the act of assembly, serves to ascertain its true lineaments, when rendered doubtful or obscure by ambiguous or awkward language, and is itself sufficient to limit the application of the act to escapes from the prison house of the county, corporation or district, unless the act explicitly had a wider scope. The argument of the plaintiff in error imputes to the legislature the intention of subjecting to the remedy of the escape warrant all persons escaping from the custody produced by an arrest on mesne or final process. If *that had been the intention, is it allowable to suppose that the legislature would have copied so literally a statute that sedulously excluded such escapes from its operation ? Had such been the intention, would not the legislature, instead of using language made cumbrous by the purpose of limiting the remedy to escapes from jails, and keepers of jails, who were not arresting officers, to the exclusion of those from arresting officers, have used the plain, simple and unambiguous language that would have sufficed to indicate that intention ? Had such been the intention, that act would most probably have been framed thus, or to this effect: “If any person, being lawfully in custody, in execution or on mesne process, whether by arrest, commitment, render, charge or detainer, shall escape from such custody,” &c. Again, the language of the act of assembly cannot, without the violation of just rules of construction, be interpreted to embrace the escape from custody resulting from arrest only. The argument is, that arrest is imprisonment, and the person arrested is a prisoner, and a prisoner is one in prison ; and thus the case is made for the literal application of the act. I will not say that a statute speaking of one in prison, or committed to prison, may not, from its context, or from other considerations, be interpreted to comprehend those in legal custody though not within the walls of the building. Imprisonment is certainly predicable of one not within the walls of a prison or the limits of its rules. The question is, whether it is used in that sense in the act. That it is not, I think is manifest. The language of the act is, “ If any person committed, rendered, or charged in custody, in execution or upon mesne process, to any county or corporation prison, or to the jail of any district, shall thence escape,” &c. Now it is obvious that prison is used in a sense different from mere lawful custody. The party must be committed to prison ; he must be in custody before he is committed; *and yet the argument is that a party in custody is in prison. If he is in prison by the arrest, then the arrest is a commitment to prison, and the legislature is convicted of using this language, taken from an act where it means no such thing, for the purpose of indicating a different meaning; and of doing this to the exclusion of the simple word which would have conveyed the meaning distinctly and free from doubt. That commitment to the prison is indispensable to the predicament in which the party must be in order to be subjected to the warrant, is further evinced by the requirement of the act that the warrant shall recite the cause (not of the arrest — not of the custody, but) of the commitment. In the act, custody and commitment are not treated as equivalents, but as distinct. It does not provide for the case of those that are in custody or committed, but of those in custody and committed ; and to make custody equivalent to commitment, would make the act in part supererogatory or senseless.
I am for affirming the judgment, with costs.
CABEXE, X, concurred.
TUCKER, P.
I am of opinion that this judgment be affirmed. The case appears to me too plain for argument. The attempt, however ingenious, to make the custody of the sheriff a commitment to the county prison or district jail, within the meaning of the act of assembly, cannot prevail. That act was designed to embrace the case of prisoners actually committed to the walls of the jail, and escaping thence, and does not apply to the case of a party arrested, either on mesne or final process, and escaping from the custody of the sheriff before he has been committed.
In England, from whose statute book our act has been mainly taken, this question could never be permitted to be discussed. Eor the statute of Anne only provides *the escape warrant where the prisoner escapes from the marshal of *621 the king’s bench, or the warden of the Fleet. But these were only jailors. No process was directed to them, none was served by them. The action of the party was commenced, it is true, in the courts of Westminster, but the capias was directed to the sheriff of the county, however distant, in which the defendant resided. It was executed by the sheriff, whose duty it was to commit the defendant to his count}' jail, where he remained, whether on mesne or final process, until removed by habeas corpus into the king’s bench prison, or the Fleet. He was thereby delivered over to the warden of the one, or the marshal of the other. It was then only that the statute had any application to the case of his escape. An escape from the marshal or the warden was all that was contemplated. There is not a syllable in the statute that can be tortured to apply to the sheriff, or even his county jail. From the time of the arrest till the prisoner was turned over to the marshal or warden, the only remedy in case of escape was recaption. The sheriff’s security in the case of final process was the posse comitatus, which he was authorized to summon ; and if he did not, he was responsible for the escape. And even on mesne process, he had a right to call upon the posse, though he was not bound to do so. But the sheriff had never the power to sue out an escape warrant, upon the escape of the prisoner from hia hands or his jail.
If this be so in England, upon what ground can this court, in violation of the plain words of the act, extend it to the case of escapes from the sheriff before commitment to actual prison ? I cannot perceive. The act is made “for the more effectual retaking and securing persons who escape out of prison.” It enacts “that if any person committed, rendered, or charged in custody, in execution or upon mesne process, to any county or corporation prison, or to the jail of any district, shall thence *escape,”&c. Here, throughout, every expression indicates place, instead of custody in its most enlarged acceptation ; every phrase distinctly points to the walls of the jail, as in the contemplation of the legislature. What sheriff, what creditor, would have the hardihood to swear that Eockridge had been committed to the county prison of Bath, and that he had escaped thence, and was going at large? I feel well assured that the learned counsel could never have recommended such an oath. Yet it is upon oath of such escape only, that the warrant can issue. I think, therefore, that in this case it was illegal and void.
The argument, that, according to legal phraseology, every confinement under authority of law is an imprisonment, and every man so confined is in prison in contemplation of law, is to some intents most certainly true. But if the word prison, in its most general sense, means any confinement, yet in its more limited and confined, but more usual and familiar sense, it means the building in which prisoners are confined, and is convertible with jail. Thus in the statute concerning prisonbreakers, 1 Eev.Code, ch.165, p. 59S, provision is made for the case of a party “ who, being in actual jail, breaketh prison.’’ Could it be contended that a person in the sheriff’s custody, who breaks away from him, breaketh prison ? I should think not. Statutes would be snares for the people if they could be so interpreted. In these, it is obvious that the word prison is made use of i n its popular, and not in its technical sense, of which it is probable the draughtsman never dreamed'.
I have perhaps already said more on this question than it would seem to merit; but I have done so in deference to the veteran and able counsel who has so zealously maintained the proposition I have controverted. It remains but to repeat that I am of opinion to affirm the judgment of the circuit court.
Judgment affirmed.